Filed 6/10/16  In re J.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re J.P., a Person Coming Under the Juvenile Court Law.

THE PEOPLE,

       Plaintiff and Respondent,

v.

J.P.,

       Defendant and Appellant.

E063285

(Super.Ct.No. J257905)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G.

1

McGinnis, and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court found that defendant and appellant J.P. committed two lewd acts upon his eight-year-old cousin, in violation of Penal Code section 288, subdivision (a)[1] (counts 1 & 2). The court declared J.P. a ward of the court under Welfare and Institutions Code section 602 and placed him on formal probation in the custody of his mother.

On appeal, J.P. argues:

1. There was insufficient evidence he harbored the necessary lewd intent to commit a violation of section 288, subdivision (a).

2. His prearrest statements to law enforcement should have been excluded because they were not preceded by *Miranda*[2] warnings and were not knowing and voluntary.

3. The court erred in setting a maximum term of confinement of 10 years.

4. The court imposed an unconstitutionally vague and overbroad probation term.

For the reasons discussed *post*, we reject these contentions and affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

I

FACTS AND PROCEDURAL BACKGROUND

A.    *The Incidents*

The victim, J.P.'s cousin, testified at the jurisdictional hearing that J.P. touched her vagina on two separate occasions. At the time of the incidents, the victim was eight and J.P. was 14. By the time of the hearing, the victim was 11 and J.P. was 17 and a senior in high school.

The first incident happened in August or September 2012, when J.P. and the victim were alone in J.P.'s bedroom, playing a video game. The victim testified that they were sitting next to each other on the bed when J.P. grabbed her by her shoulders and pulled her closer to him. J.P. put his hands down her pants and inside her underwear. He rubbed her bare vagina, in a circular motion, for about 30 seconds.

About two weeks later, while playing hide and seek at J.P.'s house, the victim hid in a small trailer in the backyard. J.P. followed her into the trailer and stood behind her. He put his hands down her pants and rubbed her bare vagina in the same way he had before, again for about 30 seconds. The victim did not tell anyone about either incident at the time.

About two years later, the victim's father was arrested for molesting the victim's older sister. The victim's mother asked the victim if she had ever been touched inappropriately, and the victim told her about the two incidents with J.P. in 2012. The victim also told a counselor her family was seeing as a result of her father's arrest that

3

J.P. had touched her inappropriately. The counselor reported this information to child protective services.

A deputy from the San Bernardino County Sheriff's Department testified that, on August 12, 2014, he went to J.P.'s house to question him about the victim's allegations. J.P. indicated to the deputy that he remembered the incident. J.P. recalled it happened approximately two years before, when he and the victim were playing a video game. He said he might have accidentally touched the victim as he was moving her. However, he denied putting his hands down the victim's pants or touching her under her clothing.

J.P. testified that he never touched the victim inappropriately. According to J.P., he and the victim never played video games alone and they never sat on the bed together. Whenever he played video games, he would sit on a chair he would bring in from the kitchen table.

J.P. acknowledged that he may have accidentally touched the victim's "private parts" once. He described an incident where the victim had climbed onto his lap while he was sitting in the chair playing the video game. J.P. testified that he grabbed the victim by the waist with both hands, picked her up, and placed her on the bed next to him. He denied putting his hand down her pants when this happened and he denied having ever touched her under her clothing. He denied the hide-and-seek incident had occurred.

B.     *The Juvenile Court's Ruling*

After hearing testimony, the trial court found the allegations in counts 1 and 2 true. The court found the victim "very credible," observing that she "answered questions

4

forthright," and "didn't . . . look like she was exaggerating." As factors supporting its finding that J.P. harbored the requisite lewd intent, the court pointed to J.P.'s age ("at the time this minor was older") and the clandestine nature of the incidents ("both episodes happened in a private location"). The court observed that when the victim's family visited J.P.'s house "there probably [were] lots of kids running around . . . parents around," which "may explain why it only happened twice over this time period."

## II

## DISCUSSION

### A. *Lewd Intent*

J.P. contends there was insufficient evidence he harbored the requisite criminal intent when he touched the victim's vagina. He bases his contention on his age at the time and the lack of evidence of sexual arousal. We conclude there is substantial evidence to support the court's finding that on each occasion J.P. touched the victim with a lewd intent.

"In determining whether there is sufficient evidence to find a defendant guilty of violating section 288, subdivision (a), '[w]e review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. [Citations.] The trier of fact, not the appellate court, must be convinced of the defendant's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of

5

the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' " (*In re Randy S.* (1999) 76 Cal.App.4th 400, 404.)

"The criminal intent required to prove a violation of section 288 is 'the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires' of perpetrator or victim. The intent with which the act is done is manifested by the circumstances under which the act is committed. [Citation.] Each case involving a lewd act must be decided on its own facts." (*In re Paul C.* (1990) 221 Cal.App.3d 43, 54, fn. omitted.) As our Supreme Court has explained, "the circumstances of the touching [are] highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent [citation], and such intent must be inferred from all the circumstances beyond a reasonable doubt." (*People v. Martinez* (1995) 11 Cal.4th 434, 452.) Circumstances relevant to lewd intent include the nature of the charged act, whether it was done in private, and the defendant's extrajudicial statements. (*Id.* at p. 445.)

J.P. relies on *In re Jerry M.* (1997) 59 Cal.App.4th 289 to support his argument that he was too young to have harbored a lewd intent when he touched the victim. In that case, Jerry, an 11-year-old boy, touched the breasts of two 12-year-old girls and one 13-year-old girl and coerced a 12 year old to show him her breasts. (*Id.* at pp. 293-295.) The juvenile court found Jerry committed four counts of violating section 288, subdivision (a). (*Id.* at p. 293.) The appellate court reversed on the ground there was insufficient evidence of lewd intent. (*Id.* at p. 300.)

In reaching this conclusion, the court relied on the following factors: Jerry's young age and the fact there was "no evidence he had reached puberty" and "no evidence of sexual arousal"; Jerry had made no attempt to avoid detection, each touching had been momentary and performed in public; and there had been no "caressing." (*In re Jerry M.*, *supra*, 59 Cal.App.4th at p. 300.) The court concluded that "Jerry was a brazen 11-year-old whose conduct was more consistent with an intent to annoy and obtain attention than with sexual arousal." (*Ibid.*)

Unfortunately, the same cannot be said about J.P.'s acts based on the record before us. Unlike in *Jerry M.*, there are several factors that support the juvenile court's finding of sexual intent.

First, the manner in which J.P. touched the victim indicates it was not done innocently or accidentally, but instead for sexual gratification. J.P. reached inside the victim's underwear and put his hand on her bare vagina. He proceeded to rub her vagina for half a minute, in a circular motion. A prolonged caress of a person's bare genitals generally does not occur accidentally or innocently. The victim testified that she could tell J.P.'s actions were not accidental and that no one had ever touched her "like th[at]" while playing. Second, that J.P. waited until he and the victim were alone (the video game incident) and followed her into a private area (the hide-and-seek incident), suggests a lewd intent. (See *In re Randy S.*, *supra*, 76 Cal.App.4th at p. 407 ["clandestine" nature of 11 year old's act supported a finding of lewd intent].) Third, J.P.'s statements to the deputy support an inference that he had a guilty conscience about having touched the

7

victim. When the deputy asked J.P. if he had ever touched his younger cousin, his immediate response was that he remembered an incident from two years before, in which he might have accidentally touched the victim while they were playing a video game. While J.P. stressed that any touching would have been accidental, the mere fact he remembered the specific video game incident from two years before supports an inference that he felt the incident was inappropriate. All of these factors cut against J.P.'s argument that the incidents were a result of "simple, albeit highly inappropriate, curiosity."

J.P. makes much out of what the victim did not say during her testimony. He points out that there was no evidence he was sexually experienced, had gone through puberty, or was aroused during the touching. But the absence of these factors does not negate the possibility of lewd intent. The sexual (as opposed to merely "curious") manner in which he touched the victim and the fact he did so in private are alone sufficient to support a finding of lewd intent. That J.P. may not have had an erection like the 13 year old in *In re Paul C.* or may not have reached sexual maturity[3] are not dispostive factors. (*In re Paul C.*, *supra*, 221 Cal.App.3d at pp. 47, 54.) As courts have

---

[3] J.P. was 14 when the incidents occurred. "Webster's Third New International Dictionary (1993) . . . [a]t page 1835, . . . defines 'puberty' as 'the condition of being or the period of becoming first capable of reproducing sexually marked by maturing of the genital organs, development of secondary sex characteristics, . . . *the age at which puberty occurs [is] often construed legally as 14 in boys* and 12 in girls.'" (*In re Randy S.*, *supra*, 76 Cal.App.4th at p. 405, fn. 5, italics added.)

8

explained, even children under the age of 14 are capable of lewd conduct. " 'It is not all that unusual for mature children age 13 or younger sexually to molest children even younger than they knowing it is wrong to do so.' " (*Id.* at p. 51.)

Taking the victim's testimony as true, as the standard of review requires us to do, we conclude the record contains substantial evidence of lewd intent based on the sexual and private nature of the touching.

### B.     *J.P.'s Statements to the Deputy*

J.P. contends his statements to the deputy should have been excluded because they were given without a *Miranda* warning and were not knowing and voluntary.

#### 1.     *Factual background*

The deputy and J.P. testified at the hearing on J.P.'s motion to exclude his prearrest statements. According to the deputy, after interviewing the victim and her mother about the incidents, he went to J.P.'s home to question him about the victim's allegations. The deputy parked his marked police car in front of the home and honked his horn to announce his presence. J.P. came outside and spoke to the deputy through the five foot tall chain link fence that surrounded his property.

The deputy confirmed J.P.'s name and told him he was there to talk to him about the victim's allegations that he had "touch[ed] her." J.P. responded, "Yes, I remember that." J.P. said he had accidentally touched the victim over her pants while they were playing a video game, about two years ago. The deputy asked whether J.P. had put his

9

hands down the victim's pants and J.P. replied, "no." The deputy left without citing or arresting J.P.

The deputy described his interaction and conversation with J.P. as "quick." J.P. stood about five feet away from the fence the entire time and the deputy had no access to him. The deputy was in uniform. At no point did the deputy give J.P. a *Miranda* warning or tell J.P. he had to stay and talk to him. Later that afternoon, the deputy returned and issued J.P. a citation but did not arrest him.

J.P. testified that he felt he had to answer the deputy's questions and could not go back into his house while the deputy was there.

The court denied J.P.'s motion. It concluded there was no *Miranda* violation because J.P. was not in custody when the deputy questioned him.

### 2. *Miranda warning*

*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."[4] (*Oregon v. Mathiason* (1977) 429 U.S. 492, 495 [*Miranda* is not applicable "simply because . . . the questioned person is one whom the police suspect"].) " 'Absent "custodial interrogation," *Miranda* simply does not come into play.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.)

---

[4] " 'Before being subjected to "custodial interrogation," a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." ' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1399-1400 (*Leonard*).)

"An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Whether a person is in custody is an objective test; the pertinent inquiry is whether there was ' " 'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*Leonard*, *supra*, 40 Cal.4th at p. 1400.) Relevant factors include: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753; see also *In re Joseph R.* (1998) 65 Cal.App.4th 954, 961 [although the officer handcuffed minor and placed him in the patrol car, minor was not in custody during the 20-minute encounter because the officer let him out of the car and removed the handcuffs before questioning].)

"When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave.' " (*Leonard*, *supra*, 40 Cal.4th at p. 1400.)

Here, the totality of the circumstances surrounding the deputy's questioning demonstrate that J.P. was not in custody. The deputy was the only officer present and he did not arrest J.P. J.P. came out of his house to speak with the deputy and remained in

11

his own yard for the entirety of the conversation, which, based on their testimony, could not have lasted longer than a few minutes. At no time during this brief conversation did the deputy tell J.P. he could not leave.

J.P. testified he felt he had to answer the deputy's questions; however, this perception represents his subjective belief and was not objectively reasonable based on the deputy's actions. J.P. did not claim the deputy acted in a coercive or confrontational manner, and no evidence in the record suggests that was the case. In the absence of any objective indicia of detention, we must conclude J.P. was not in custody for *Miranda* purposes. The juvenile court therefore did not err by admitting J.P.'s prearrest statements.

### 3. *Voluntariness*

J.P. argues his statements to the deputy were involuntary because of his young age and lack of experience with law enforcement.

"A statement is involuntary if it is not the product of ' "a rational intellect and free will." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 404.) The test for determining voluntariness is whether the defendant's will was " 'overborne' " at the time of the statement. (*Ibid.*) "A finding of *coercive* police activity is a *prerequisite* to a finding that a confession was involuntary under the federal and state Constitutions. [Citation.] A confession may be found involuntary if extracted by threats or violence, obtained by direct or implied promises, or secured by the exertion of improper influence. [Citation.] . . . . The statement and the inducement must be causally linked." (*Id*. at pp. 404-405,

12

italics added.)  "On appeal, we uphold the trial court's findings of historical fact, but we independently review its determination that defendant's statements were voluntary." (*Leonard*, *supra*, 40 Cal.4th at pp. 1402-1403.)

The entirety of the deputy's interaction with J.P. consists of the deputy arriving at his home, confirming his identity, and inquiring whether the victim's accusations were true.  There is no evidence the deputy exerted coercion or any type of improper influence over J.P. during this interaction.  J.P.'s emphasis on his age (he was 16 at the time) and his lack of experience with law enforcement misses the focus of the voluntariness analysis.  The question is whether the police employed any objectively improper, coercive tactics to elicit statements from a defendant, and there is simply no evidence the deputy did so.

C.      *Maximum Term of Confinement*

J.P. argues that because he was placed on probation and not removed from his mother's custody, it was error for the court to set his maximum term of confinement at 10 years.  While it is true a court is authorized to set a maximum term of confinement only when the minor is placed in custody (and therefore removed from parental custody) (*In re Ali A.* (2006) 139 Cal.App.4th 569, 573-574), the court did not actually set a maximum term of confinement in this case.

At the jurisdiction hearing, the court informed J.P. that his maximum term of confinement "would" be 10 years because counts 1 and 2 would be felonies if committed by an adult.  (Italics added.)  When the court pronounced J.P.'s sentence at the

13

disposition hearing, it placed him on probation in his mother's custody and did not set, or even mention, a maximum term of confinement. Additionally, J.P.'s juvenile detention disposition report contains no reference to confinement.

The court's statement at the jurisdiction hearing did not have the legal effect of setting a maximum term of confinement. (*In re P.A.* (2012) 211 Cal.App.4th 23, 31-32 ["What the court stated at the jurisdiction hearing regarding the maximum term of confinement is of no consequence"].) Because the court did not set a maximum term of confinement, we decline J.P's request to "remove" the court's statement from the record.

D.      *Probation Condition No. 22*

Condition No. 22 of J.P.'s probation conditions states that J.P. shall "[n]ot associate with (persons/females/males) [he] knows or reasonably should know are under the age of 14, unless in the presence of a responsible adult who is aware of the nature of [his] background and current offense, and who has been approved by the probation officer." The following exchange occurred after the court imposed this condition:

"[THE COURT:]  So obviously I understand from the trial that this is a family where there were lots of cousins together. He can't be alone with anyone under the age of 14, and the person in the room with him has to be aware of the offense. [¶]  Do you understand that, ma'am?

"MINOR'S MOTHER:  Yes.

"THE COURT:  And do you understand that, [J.P.]?

"THE MINOR:  Yes.

14

"THE COURT: I don't want probation to show up at the house—if you're in the room playing video games and there's a 12-year-old in there, you're going to be in violation. Understood?

"THE MINOR: Yes."

J.P. contends condition No. 22 is vague and overbroad because he could arguably violate it by attending high school. He also argues the requirement that the supervising adult be "aware of the nature of his background and current offense" violates the Welfare and Institutions Code by failing to protect the confidentiality of his name and offense. J.P. asks us to modify condition No. 22 to read that he shall not associate with children under the age of 14, unless he is in the presence of a responsible adult "*or he is in a supervised classroom setting*." (Italics added, bolding omitted.) We conclude the condition does not violate his constitutional rights or any right to confidentiality under the Welfare and Institutions Code.

"The juvenile court has wide discretion to select appropriate conditions and may impose ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " ' [Citations.] In distinguishing between the permissible exercise of discretion in probationary sentencing by the juvenile court and that allowed in 'adult' court, we have advised that, '[a]lthough the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment . . . ." [¶] In light of this difference, a condition of probation that would be unconstitutional or

15

otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. . . .' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

Condition No. 22 is not vague or overbroad. The condition clearly conveys what constitutes a violation, that is, association with a child under the age of 14 without the supervision of an approved adult who knows the nature of J.P.'s offense. As for the condition's breadth, J.P. has not identified a constitutionally protected right that is being burdened by the condition. J.P. simply argues that his probation terms and conditions also require him to attend high school and that he is likely to "come into contact" with children under the age of 14 while at school. This argument is unavailing.

First, condition No. 22 does not prohibit J.P. from *coming into contact with* a child under the age of 14. What the condition prohibits is *association*, which is a more substantial and prolonged form of interaction. Second, depending on J.P.'s academic status, his concern is either moot or unfounded. J.P. is currently 18 years old. When the court imposed the probation conditions in March 2015, he was a high school senior. If J.P. graduated from high school in 2015, his concern about violating the condition at

16

school is moot.  And if he has not graduated, it is difficult to imagine a scenario where a high school senior would be unable to avoid associating with children 13 years old or younger while on campus.

We also reject the argument that condition No. 22's adult supervision requirement violates the Welfare and Institutions Code.  J.P. cites to Welfare and Institutions Code section 676, claiming it "provides that [his] name and offense remain confidential."  In fact, Welfare and Institutions Code section 676 simply sets forth the general rule that juvenile court hearings are not open to the public (with exceptions for certain offenses and certain interested persons), and provides that only certain juvenile court records may be disclosed to the public.  (Welf. & Inst. Code, § 676, subds. (a), (c).)  Indeed, as the People point out, Welfare and Institutions Code section 204.5 allows a minor's name to be disclosed to the public if the minor is 14 or older and found by the juvenile court to have committed certain offenses, including violations of Penal Code section 288, subdivision (a).  (Welf. & Inst. Code, § 204.5; see also Pen. Code, §§ 667.5, subd. (c)(6), 1192.7, subd. (c)(6).)

In any event, even if the Welfare and Institutions Code requires J.P.'s name and offense to remain confidential, condition No. 22 does not require him to divulge that information to anyone.  J.P. can choose not to associate with children under the age of 14 or he can choose to do so under the supervision of an adult who is already aware of his offense, such as his mother.  The requirement that the adult be aware of the offense is necessary to ensure the adult is appropriately vigilant while supervising J.P. around

17

young children.  Condition No. 22 allows J.P. to associate with young children while also providing the supervision necessary to prevent future violations of Penal Code section 288, subdivision (a).  We therefore uphold condition No. 22 as a reasonable condition intended to prevent recidivism and promote "reformation and rehabilitation."  (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS.

SLOUGH
J.

We concur:

MILLER
Acting P. J.

CODRINGTON
J.